# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| THOMAS A. GREEN, | : | CIVIL ACTION NO. 1:13-CV-00827 |
| --- | --- | --- |
| Petitioner, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| JOHN KERESTES, | : | |
| | : | (Magistrate Judge Schwab) |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

The petitioner, Thomas A. Green ("Green"), filed this federal habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his June 16, 1999, Pennsylvania jury trial conviction for third degree murder, for which he received 20 to 40 years imprisonment. Green then proceeded to file a timely direct appeal and a timely petition for post-conviction relief under Pennsylvania's Post Conviction Relief Act ("PCRA"). In each instance, Green's conviction was upheld. Subsequently, on March 18, 2013, Green filed the federal habeas corpus petition currently under review. Before me now is the respondent's motion to dismiss Green's petition as untimely filed. For the reasons set forth herein, I recommend that respondent's motion be granted and Green's petition be dismissed as untimely.

## I. Background and Procedural History.

With respect to this case, the undisputed facts set forth in the petition (*Doc. 1*), respondent's documents in support of its motion to dismiss (*Docs. 6 & 13*), and Green's reply brief (*Doc. 11*) reveal that on April 16, 1999, Green was convicted by a jury of third degree murder in the Dauphin County Court of Common Pleas. Two months later, on June 16, 1999, Green received a sentence of 20 to 40 years imprisonment.

Following his sentence, Green filed a direct appeal in the Pennsylvania Superior Court. On August 28, 2002, the Superior Court denied Green's direct appeal. Thereafter, Green filed a petition for allowance of appeal in the Pennsylvania Supreme Court, and on June 23, 2003, it was also denied. Green did not subsequently file a petition for certiorari with the United States Supreme Court.

On March 3, 2004, Green proceeded to file a timely PCRA petition, his first. After his first PCRA petition was initially rejected by the PCRA court, Green sought review in the Pennsylvania Superior and Supreme Courts, respectively. On September 27, 2006, the Pennsylvania Supreme Court ultimately denied Green's petition for allowance of appeal and Green did not seek further review.

Almost five years later, on July 27, 2011, Green filed a second PCRA petition. The second PCRA petition was dismissed as untimely filed. On February 27, 2013, after the Pennsylvania Superior Court upheld the PCRA court's

dismissal, the Pennsylvania Supreme Court denied Green's petition for allowance of appeal.

On March 18, 2013, Green filed this federal habeas corpus petition. *Doc.* 1. After Green filed his petition, I conducted a preliminary review under Rule 4 of the Rules Governing Section 2254 Cases. Rather than recommending dismissal, I issued an order pursuant to *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), putting Green on notice of the consequences of filing a federal habeas corpus petition and the procedural requirements that he must satisfy under the relevant habeas corpus statutes. *Doc.* 3. Green was also given the option of either proceeding on his original petition, as filed, or withdrawing the petition and filing an all-inclusive, comprehensive one. *Id.* On April 22, 2013, Green timely filed his notice of election, electing to proceed on his habeas corpus petition as originally filed. *Doc.* 4. Thereafter, I ordered respondent to file an answer and a memorandum of law addressing Green's petition. *Doc.* 5.

On April 23, 2013, respondent timely filed a response by moving to dismiss Green's petition as untimely filed under the federal habeas corpus statute of limitations. *Doc.* 6. In his motion, respondent also argues that Green is not entitled to equitable tolling of the statute of limitations, because Green did not exercise reasonable diligence in investigating and bringing his claims. *Id.* at ¶ 16. Green then filed a timely response. *Doc.* 11. According to Green, his petition

3

should not be dismissed as untimely filed, because (1) the Commonwealth courts did not allow him to address the grounds contained in his second PCRA petition on the merits and (2) he is otherwise entitled to equitable tolling because the common law "castle doctrine" was unavailable at his trial in that it first appeared when it was codified by the Pennsylvania legislature in 2011.[1]  *Id.*  On May 29, 2013, the respondent filed a reply addressing the same and adding that not only was the castle doctrine was neither withheld from Green nor intended (or held) to be applied retroactively.  *Doc.* 13.

## II.     Discussion.

### A. State Prisoner Habeas Relief – The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

---

[1]     Green also argues in his petition, *Doc.* 1 at 13, that the codification of the castle doctrine in 2011 caused the one-year habeas corpus statute of limitations to be statutorily tolled for another year pursuant to 28 U.S.C. §§ 2244(d)(1)(B) and (D).  Respondent did not address either argument in his motion to dismiss, but I will proceed to address Green's arguments in this report and recommendation.

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
>> (A) the applicant has exhausted the remedies available in the courts of the State;
>>
>> . . .
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b). Accordingly, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. The statute of limitations issue pending before the Court, however, is a threshold issue that only concerns itself with the procedural benchmarks for filing a federal habeas corpus petition.

### B. The Federal Habeas Corpus Statute of Limitations.

Among the procedural prerequisites is the requirement that petitioners timely file petitions seeking habeas corpus relief. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244 establishes a one-year statute of limitations on the filing of habeas petitions by state prisoners. In pertinent part, § 2244(d)(1), provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Additionally, 28 U.S.C. § 2244(d)(2), provides that:

> The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In assessing § 2244(d)(2)'s tolling provision relating to the time when a case is "pending" state review, it is clear that "the term 'pending' must include the time between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." *Swartz v. Meyers*, 204 F.3d 417, 424 (3d Cir. 2000). Thus, the courts have construed this tolling provision in a forgiving fashion, and in a manner which enables petitioners to toll their filing deadlines for the time periods in which

they could have sought further direct appellate review of their cases, even if they did not, in fact, elect to seek such review. *Swartz*, 204 F.3d at 424-25.

Moreover, for purposes of tolling the federal habeas statute of limitations, a "properly filed application for State post-conviction or other collateral review" is one that is filed in a timely fashion under state law. Therefore, if the petitioner is delinquent in seeking state collateral review of his conviction, that tardy state pleading will not be considered a "properly filed application for State postconviction or other collateral review" and will not toll the limitation period. *Pace v. DiGuglielmo*, 544 U.S. 408, 412-14 (2005); *Long v. Wilson*, 393 F.3d 390, 394-95 (3d. Cir. 2004).

AEDPA's one-year limitation period, however, is not a jurisdictional bar to the filing of habeas petitions; *Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 617-18 (3d Cir. 1998), and, therefore, is subject to equitable tolling. *Id*. Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored. *Pabon v. Mahanoy*, 654 F.3d 385, 389 (3d Cir. 2011)(quoting *Jones v. Morton*, 195 F.3d 153, 159 (1999)). As the Third Circuit has observed: "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' The petitioner must [also] show that he or she 'exercised reasonable

7

diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." *Id*. at 618-19 (citations omitted).

The decision to equitably toll § 2244(d), "must be made on a case-by-case basis." *Holland v. Florida*, — U.S. —, 130 S.Ct. 2549, 2563 (2010) (quoting *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964)). "In each case, there is a need for 'flexibility,' 'avoiding mechanical rules,' and 'awareness ... that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.'" *Pabon*, 654 F.3d at 399 (quoting *Holland*, 130 S.Ct. at 2563). Thus, there are "no bright lines in determining whether equitable tolling is warranted in a given case." *Id*.

**C. Green's Petition and Statutory Tolling**.

Green's conviction became final on June 23, 2003, when his time for filing a petition for certiorari with the United States Supreme Court expired, which was 90 days after the Pennsylvania Supreme Court denied Green's petition for allowance of appeal. *See* Sup. Ct. R. 13(1); *see also Morris v. Horn*, 187 F.3d 333, 337 n. 1 (3d Cir. 1999) ("After ninety days, the Pennsylvania Supreme Court's decision became final because the time for seeking certiorari expired."). At this juncture, the AEDPA statute of limitations started to run.

Approximately 254 days later, on March 4, 2004, Green timely and properly filed his first PCRA petition. On September 27, 2006, however, the Supreme

8

Court of Pennsylvania ultimately upheld the PCRA court's denial of Green's first PCRA petition by denying his petition for allowance of appeal. While Green's first PCRA petition was pending review in the Pennsylvania courts, the statute of limitations remained tolled. Though, on September 28, 2006, the clock restarted, leaving Green with 111 days remaining to file a timely federal habeas corpus petition. *See Swartz*, 204 F.3d at 424-25. Green did not meet the deadline; instead, he filed a second PCRA petition almost five years later. The second PCRA petition was dismissed by the PCRA court as untimely filed, and that decision was upheld by the Pennsylvania appellate courts.

As the United States Supreme Court confirmed, a petition that is rejected by a state court as untimely is not "properly filed" within the meaning of the statute, and accordingly does not toll the one-year statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 1812, 161 L.Ed.2d 669 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).") (alteration in original). Furthermore, it is well established that the federal courts must "give deference to the state court's determination of the timeliness of the state PCRA petition." *Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003). Because the Pennsylvania courts have already determined that Green's second PCRA petition was untimely, "it would be an undue interference for [us] to decide otherwise," as Green suggests that this Court

9

should do because a hearing was not held. *Id.*; *see also Fahy v. Horn*, 240 F.3d 239, 243-44 (3d Cir. 2001). Thus, absent any other statutory tolling provision or equitable tolling, Green's petition is untimely and should be dismissed accordingly.

### 1. The State Created Impediment Provision.

In addition to equitable tolling, Green argues that the one-year filing period should have restarted on the date that the Commonwealth removed the state created impediment; namely, when the Commonwealth codified the castle doctrine in 2011.[2] As referenced, *supra*, under 28 U.S.C. § 2244(d)(1)(B), the statute of limitations begins to run on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." In the case *sub judice*, Green argues that he is entitled to statutory tolling beginning on June 18, 2011, the date he alleges that the Pennsylvania legislature first codified the castle doctrine, 18 Pa. C.S.A. § 505. *See Doc.* 1 at 13. However, the circumstances Green describes do not give rise to an impediment of the type described in 28 U.S.C. § 2244(d)(1)(B). Such an impediment might exist where a

---

[2] The castle doctrine is an affirmative defense, normally raised by a criminal defendant in an attempt to justify the use of force inside of one's dwelling. The doctrine is built upon the notion that "[e]very man's house is his castle." *See* Joshua G. Light, *The Castle Doctrine – The Lobby is My Dwelling*, 22 Widener L.J. 219, 221-22 (discussing the history of the castle doctrine).

clerk's office fails to timely file a petition, a prison transfer prevents a petitioner from contacting counsel, a prison offers inmates an inadequate law library, or where a state court simply refuses to rule on a constitutional issue properly before it. *See Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 405, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001); *Critchley v. Thaler*, 586 F.3d 318, 321 (5th Cir. 2009); *Earl v. Fabian*, 556 F.3d 717, 719-20, 726 (8th Cir. 2009); *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000). But here, as discussed *infra*, the castle doctrine was recognized as a common law defense to homicide in Pennsylvania before its codification, and there is no evidence, or argument by Green, that the law was actively concealed from him or that the state courts did not consider any self-defense claim that he might have raised at his trial. In fact, there is simply no argument or evidence presented by Green indicating any government action that impeded his ability to timely file his grounds for relief. Last, even assuming that the newly codified law qualified as a state-created impediment, the fact that his second PCRA petition was dismissed as untimely would weigh against further tolling under the statute, still resulting in an untimely federal habeas petition. Therefore, Green's petition remains untimely and should be dismissed as such.

    **2. The Factual Predicate Provision.**

Next, Green argues that under § 2244(d)(1)(D) the one-year statute of limitations should have restarted when the Commonwealth codified the castle

11

doctrine in 2011. By its language, the one-year period of limitation commences under § 2244(d)(1)(D) when the factual predicate of a claim could have been discovered through the exercise of due diligence, not when it actually was discovered. *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004)(citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). Due diligence under this subsection follows the norm for a federal statute of limitations and does not require "the maximum feasible diligence;" instead, it requires reasonable diligence under the circumstances. *Schlueter*, 384 F.3d at 74 (citing *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004)(quoting *Wims v. United States*, 225 F.3d 186, 190 n.4 (2d Cir. 2000)). Moreover, the trigger in § 2244(d)(1)(D) is focused on the facts not the law to be applied or specific legal theories, as this subsection "gives defendants the benefit of a later start if *vital facts* could not have been known by the date the appellate process ended." *Owens*, 235 F.3d at 359 (emphasis added).

Here, Green's argument is focused solely on the legal theory underpinning his case, namely self-defense, or more specifically the castle doctrine. Nowhere does Green argue that within one year of filing this petition he became aware of vital facts that he otherwise could not have discovered through the exercise of due diligence. Accordingly his argument fails and his petition remains untimely.

**D. Equitable Tolling.**

As stated, *supra,* a petitioner is entitled to tolling if he shows: (1) "that some extraordinary circumstance stood in his way and prevented timely filing"; and (2) that "he has been pursuing his rights diligently." *Pabon*, 694 F.3d at 329 (quoting *Holland*, 130 S.Ct. at 2562. The extraordinary circumstances prong requires that the petitioner "in some extraordinary way be [] prevented from asserting his or her rights." *Pabon*, 694 F.3d at 330 (quoting *Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003)). Although the decision to equitably toll the AEDPA statute of limitations must be made on a case-by-case basis, the Third Circuit, has offered some examples of extraordinary circumstances warranting equitable tolling: (1) the defendant has actively misled the plaintiff; (2) the plaintiff has in some extraordinary way been prevented from asserting his rights; (3) the plaintiff has timely asserted his rights mistakenly in another forum; or (4) the plaintiff received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that he had done everything required of him. *Jones*, 195 F.3d at 159.

Next, the due diligence prong, which is a contextual inquiry, "does not demand a showing that the petitioner left no stone unturned." *Munchinski v. Wilson*, 694 F.3d 308, 330 (3d Cir. 2012)(quoting *Ramos–Martinez v. United States*, 638 F.3d 315, 324 (1st Cir.2011)). Rather, "[t]o determine if a petitioner has

13

been [reasonably] diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances." *Id.* at 330-31(quoting *Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011)); *see also Schlueter*, 384 F.3d at 74 (3d Cir. 2004) ("Due diligence ... require[s] reasonable diligence in the circumstances."). In other words, the diligence inquiry is fact-specific and depends on the circumstances faced by the particular petitioner; there are no bright line rules as to what conduct is insufficient to constitute reasonable diligence. *Id.* at 331. If a petitioner "did what he reasonably thought was necessary to preserve his rights ... based on information he received ..., then he can hardly be faulted for not acting more 'diligently' than he did." *Id.* (quoting *Holmes v. Spencer*, 685 F.3d 51, 65 (1st Cir. 2012)).

Here, Green's argument for equitable tolling of the AEDPA statute of limitations is the same as before: he believes that the Commonwealth concealed the castle doctrine from him until the common law doctrine became codified by the Pennsylvania Legislature in 2011. *Docs.* 1 at 13 & 11 at ¶ 16. Green does not argue that he was prohibited from conducting legal research or that his ability to conduct legal research was restricted or impeded; nor does Green argue that he was actively misled by the defendant or that he filed his claims in the wrong forum. Furthermore, although I realize that he is not trained or well-versed in the law, a quick survey of Pennsylvania criminal law would have almost immediately

14

revealed to him that the common law castle doctrine "has always been recognized as the law in [Pennsylvania]."[3] *Commonwealth v. Fraser*, 85 A.2d 126, 127-28 (Pa. 1952); *Commonwealth v. Derby*, 678 A.2d 784 (Pa. Super. Ct. 1996). In 2011, what the Pennsylvania Legislature did was expand upon the already existing body of law in Pennsylvania, with respect to the castle doctrine, by creating a presumption that deadly force is immediately necessary to protect one's self. *See* 18 Pa. P.S.C. § 505(b)(2.1)(providing a presumption of reasonable belief that deadly force is needed to protect oneself from death or serious physical injury when using force against an individual who is unlawfully entering or has unlawfully entered a dwelling with no requirement to prove reasonable apprehension of loss of life or great bodily harm to justify the use of force). This new presumption, however, was never intended, or held, to be retroactively applied. *See* 1 Pa.C.S.A. § 1926 (stating "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly[]").

Accordingly, I cannot find that an extraordinary circumstance prevented Green from timely asserting his grounds for habeas corpus relief. In a similar vein, given that the castle doctrine has been the law of the Commonwealth for some time

---

[3] I also note that a cursory review of the legislative history of 18 Pa.C.S.A. § 505(b)(2)(ii)(A) indicates that in 1973, the Pennsylvania Legislature codified that there was no duty to retreat inside of one's own dwelling; therefore, it appears that reasonable use of force in defense of one's self, in one's own dwelling, was a permissible affirmative defense prior to Green's criminal trial, which is in essence the castle doctrine.

15

now, and the amended law does not apply retroactively, I cannot find that Green acted with due diligence in bringing forth his federal habeas corpus grounds for relief. Instead, Green waited nearly five years before ever filing his second, untimely, PCRA petition and nearly seven years before filing this petition. Thus, principles of equity would not make the rigid application of the AEDPA statute of limitation period unfair to Green, and his petition should be dismissed as untimely.

### III. Recommendation.

Hence, for the reasons stated above, **IT IS RECOMMENDED** that:

1) Green's Petition for a Writ of Habeas Corpus (*Doc.* 1), filed pursuant to 28 U.S.C. § 2254, be **DISMISSED AS UNTIMELY**;

2) Respondent's motion to dismiss (*Doc.* 6) be **GRANTED**;

3) Green's motion to appoint counsel (*Doc.* 10) be **DENIED**; and

4) A finding be made that there is no probable cause to issue a certificate of appealability.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The

briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **20th** day of **November, 2013**.

*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge